932 So.2d 1067 (2006)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Shannon NICHOLS, Respondent.
Shannon Nichols, Petitioner,
v.
State Farm Mutual Automobile Insurance Company, Respondent.
Nos. SC03-1483, SC03-1653.
Supreme Court of Florida.
June 1, 2006.
*1070 Kenneth P. Hazouri of de Beaubien, Knight, Simmons, Mantzaris and Neel, LLP, Orlando, FL, for Petitioner/Respondent.
Thomas P. Hockman of Law Offices of Hockman and Hockman, Winter Park, FL, for Respondent/Petitioner.
Philip D. Parrish, P.A., Miami, Florida on behalf of the Academy of Florida Trial Lawyers, as Amicus Curiae.
CANTERO, J.
In this case, we decide whether, in a suit for benefits under a personal injury protection policy, an insurer may ever recover attorney's fees pursuant to the offer of judgment statute. We review Nichols v. State Farm Mutual, 851 So.2d 742 (Fla. 5th DCA 2003), which held that an insurer could recover such fees but certified to us a question of great public importance. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.; State Farm Mut. Auto. Ins. Co. v. Nichols, 913 So.2d 598 (Fla.2005) (granting review). As we explain below, we agree with the district court in this case, as well as the other district courts that have considered this issue, and hold that a suit for PIP benefits is a "civil action for damages" to which the offer of judgment statute applies. We also agree with the district court, however, that in this case the insurer's offer did not satisfy the requirements of Florida Rule of Civil Procedure 1.442. We therefore approve the district court's decision in full.

I. FACTS
After suffering injuries in a car accident in 1996, Shannon Nichols requested personal injury protection benefits from her insurer, State Farm. While agreeing to pay her early medical bills, State Farm requested that Nichols undergo an independent medical examination to determine the need for further treatment. Despite repeated rescheduling, she ultimately failed to attend the exam. Under the PIP statute, "[i]f a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits." § 627.736(7)(b), Fla. Stat. (1999). Relying on the statute, State Farm refused to pay any additional benefits.
Nichols filed a complaint against State Farm in county court, alleging breach of their insurance contract. While the PIP suit was pending, State Farm served Nichols with a proposal for settlement in the amount of $250. As a condition of the *1071 settlement, however, Nichols would have been required to "execute a General Release in favor of State Farm, which will be expressly limited to all claims, causes of action, etc., that have accrued through the date of Nichols's acceptance of this Proposal." At the time, she also had an outstanding uninsured motorist ("UM") claim arising from the same accident, which later settled for $13,000. Fearing that the release would extinguish both the PIP claim and the UM claim, Nichols rejected the offer. State Farm later claimed that it did not intend for the release to extinguish the UM claim.
At trial, the jury found that Nichols unreasonably refused to submit to a medical examination, which meant she was not entitled to any recovery. State Farm therefore requested attorney's fees and costs under the offer of judgment statute. See § 768.79, Fla. Stat. (1999). The county court initially denied the request, concluding that the offer of judgment statute does not apply to PIP suits. Only days later, however, the Third District held that the offer of judgment statute does apply to such suits. See U.S. Sec. Ins. Co. v. Cahuasqui, 760 So.2d 1101 (Fla. 3d DCA 2000), review dismissed, 796 So.2d 552 (Fla.2001). Upon reconsideration, the county court awarded $23,199 to State Farm. It also certified to the Fifth District a question of great public importance, asking whether the offer of judgment statute applies to PIP suits.
The Fifth District answered yes. Nichols, 851 So.2d at 744. Applying the statute's plain language, which encompasses "any civil action for damages filed in the courts of this state," § 768.79(1), Fla. Stat. (1999), the district court concluded that the Legislature "clearly and unambiguously" intended for the statute to cover PIP suits. Nichols, 851 So.2d at 745. While acknowledging "thoughtful policy arguments" for the opposite result, the district court advised that they would be "more appropriately addressed to the Legislature." Id.
Judge Sawaya dissented in part. He argued that "the Legislature never intended a suit to recover PIP benefits to be an action for damages under section 768.79." Id. at 747 (Sawaya, J., concurring in part and dissenting in part). The purpose of the PIP system, he wrote, was to guarantee swift payment to insureds without regard to fault. In his view, "application of section 768.79 to PIP cases, with its inherent uncertainties and risks, has completely abrogated the security and the assurance that injured insureds were promised by the Legislature through the No-Fault Act." Id. at 750. He joined the majority, however, in certifying to us a question of great public importance: "May an insurer recover attorney's fees under rule 1.442, Florida Rules of Civil Procedure, and section 768.79, Florida Statutes, in an action by its insured to recover under a personal injury protection policy?" Id. at 747.
On appeal, Nichols raised another issue: whether State Farm's settlement proposal satisfied Florida Rule of Civil Procedure 1.442, which demands that such proposals "state with particularity any relevant conditions" and "state with particularity all nonmonetary terms." Fla. R. Civ. P. 1.442(c)(2)(C)-(D). She argued that State Farm's offer was too ambiguous because it arguably required her to release not only her PIP claim, but also her outstanding UM claim. Nichols, 851 So.2d at 745. At the attorney's fees hearing, she even accused State Farm of attempting in bad faith to kill two claims with one release. Id. But State Farm, professing to have been "unaware of the existence of the UM claim at the time," testified "that had the proposal for settlement been accepted, [it] would not have required that the release include the UM claim." Id. at 745-46. *1072 The trial court accepted State Farm's explanation and deemed the settlement proposal valid under rule 1.442. Id. at 746.
The Fifth District concluded, however, that because the scope of the release "could not be determined without resort to clarification or judicial interpretation," id., the settlement proposal was too ambiguous to satisfy rule 1.442. According to the district court, "[t]he terms and conditions of the proposal should be devoid of ambiguity, patent or latent." Id. It therefore reversed the award of attorney's fees to State Farm.
Both parties petitioned us for review. Nichols relied on the certified question, whereas State Farm alleged express and direct conflict with other district court decisions regarding rule 1.442's particularity requirement. We granted review based on the certified question and consolidated the cases. State Farm, 913 So.2d at 598. We now approve the Fifth District's reasoning on both issues, which we analyze separately.

II. THE CERTIFIED QUESTION
The certified question asks whether the offer of judgment statute applies to PIP suits. The Fifth District answered yes, Nichols, 851 So.2d at 745, as have the other two district courts to consider the issue. See Tran v. State Farm Fire & Cas. Co., 860 So.2d 1000 (Fla. 1st DCA 2003); Cahuasqui, 760 So.2d at 1101. Two of those cases, however, produced dissents. See Nichols, 851 So.2d at 747 (Sawaya, J., concurring in part and dissenting in part); Cahuasqui, 760 So.2d at 1107 (Fletcher, J., dissenting). We agree with the three district courts and hold that the offer of judgment statute applies to PIP suits. To explain our decision, we discuss (A) whether the offer of judgment statute includes PIP suits, (B) whether the separate attorney's fees provision in the PIP statute precludes application of the offer of judgment statute, and finally (C) whether applying the offer of judgment statute to PIP suits would render unconstitutional the entire PIP system.

A. The Offer of Judgment Statute
The first issue is whether the offer of judgment statute applies to PIP suits. The statute provides:
In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.
§ 768.79(1), Fla. Stat. (1999) (emphasis added). The district courts, emphasizing the plain meaning of the statute, have consistently held that a PIP suit is a "civil action for damages." See Nichols, 851 So.2d at 745; Cahuasqui, 760 So.2d at 1104. But Nichols maintains that her suit is better characterized as an action for "benefits" or "security."
We find this characterization to be a distinction without a difference. The purpose of a PIP suit is to recover damages for breach of an insurance contract. In fact, in Nichols's initial complaint, and again in her amended complaints, she expressly referred to her suit as "an action for damages." While the contractual breach may consist of a failure to pay insurance "benefits" or "security," the plaintiff, if successful, nevertheless will receive court-ordered compensation for her loss, which is the very definition of damages. *1073 See, e.g., Black's Law Dictionary 416 (8th ed.2004) (defining damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). As one court has said, "[t]he right to damages may arise under tort law; it may arise under contract law; it may arise under property law. If the party seeks damages from another party, then the claim is covered by section 768.79's broad phrase, `civil action for damages.'" Beyel Bros. Crane & Rigging Co. of S. Fla. v. Ace Transp., Inc., 664 So.2d 62, 64 (Fla. 4th DCA 1995). Nothing in the offer of judgment statute exempts claims for contractual damages.
We have long recognized that, where a statute is free from ambiguity, we must follow its plain meaning. As we have explained, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Clines v. State, 912 So.2d 550, 555-56 (Fla.2005) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). This is one of those times. The phrase "any civil action for damages" unambiguously includes suits to recover damages for breach of a PIP insurance contract. We therefore conclude that the offer of judgment statute encompasses such cases.

B. The PIP Statute
Having determined that a PIP suit is a "civil action for damages" covered by the offer of judgment statute, we now consider whether the separate attorney's fees provision in the PIP statute precludes application of other attorney's fees provisions. In considering this issue, we note the "long-recognized principle of statutory construction that where two statutory provisions are in conflict, the specific statute controls over the general statute." State v. J.M., 824 So.2d 105, 112 (Fla.2002) (citing State ex rel. Johnson v. Vizzini, 227 So.2d 205, 207 (Fla.1969)). Moreover, the chapter containing the offer of judgment statute expressly states that "[i]f a provision of this part is in conflict with any other provision of the Florida Statutes, such other provision shall apply." § 768.71(3), Fla. Stat. (1999). Thus, if the offer of judgment statute conflicts with the attorney's fees provision in the PIP statute, the latter controls. We conclude, however, that they do not conflict.
The attorney's fees provision in the PIP statute, entitled "Applicability of provision regulating attorney's fees," states that "[w]ith respect to any dispute under the provisions of [the PIP statute] between the insured and the insurer, the provisions of s. 627.428 shall apply." § 627.736(8), Fla. Stat. (1999). The cross-referenced statute, section 627.428, provides:
Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
§ 627.428(1), Fla. Stat. (1999). In other words, a prevailing insured, but not a prevailing insurer, is entitled to attorney's fees.
*1074 Nichols argues that because section 627.428 only authorizes attorney's fees for insureds, and because it is the only attorney's fees provision incorporated into the PIP statute, it implicitly precludes courts from awarding attorney's fees to PIP insurers under any other provision, including the offer of judgment statute. She emphasizes our decision in Danis Industries Corp. v. Ground Improvement Techniques, Inc., 645 So.2d 420 (Fla.1994), which explained that section 627.428 "is a one-way street offering the potential for attorneys' fees only to the insured or beneficiary" in order "to discourage insurers from contesting valid claims and to reimburse successful policy holders forced to sue to enforce their policies." Id. at 421.
Even Danis recognized, however, that the "one-way street" under section 627.428 cannot be used as a detour around settlement negotiations. The specific issue in that case was what it meant for an insured to "prevail" under section 627.428. We held that an insured prevails only when the insured "obtain[s] a judgment greater than any offer of settlement previously tendered by the insurer." Id. In a later case, Scottsdale Insurance Co. v. DeSalvo, 748 So.2d 941 (Fla.1999), we clarified that the "judgment" includes the insured's damages plus any attorney's fees, taxable costs, and prejudgment interest incurred before the insurer's offer.
Together, Danis and DeSalvo drew a clear line between the pre-offer and post-offer periods. Unless and until the insurer offers to pay the insured's damages plus attorney's fees, costs, and interest, the "one-way street" under section 627.428 entitles the insured to attorney's fees. But once such an offer is made and rejected, the "one-way street" ends. The insured, having turned down the full amount she is owed, cannot claim the protection of section 627.428.
The question here is whether the insurer, having made an offer that eliminates the insured's entitlement to further attorney's fees under section 627.428, can recover its own fees if it meets the conditions of the offer of judgment statute. Neither Danis nor DeSalvo resolved that question. Recently, however, we did clear the way for application of the offer of judgment statute to insurance cases by extending a crucial part of the Danis/DeSalvo reasoning to the offer of judgment statute. In White v. Steak & Ale of Florida, Inc., 816 So.2d 546 (Fla.2002), we held that the term "judgment" under the offer of judgment statute must be definedas it is under section 627.428to include not only the plaintiff's damages award, but also any attorney's fees, taxable costs, and prejudgment interest to which the plaintiff would have been entitled when the offer was made. Id. at 551. "It is this judgment to which the offer must be compared in determining whether to award fees and costs" under both the offer of judgment statute and section 627.428. Id. (citing DeSalvo, 748 So.2d at 944 n. 3). We explained that "[a]lthough Danis and [DeSalvo] involved an award of attorneys' fees under section 627.428, we see no reason why this rationale should not apply equally to offers or demands made under section 768.79(6)." Id. at 551 n. 5.
Because we have uniformly defined the term "judgment" under both section 627.428 and the offer of judgment statute, the two statutes can be applied simultaneously to PIP cases without creating conflict. The following chart illustrates how they interact:

*1075
--------------------------------------------------------------------------------------------------------------------------
If the judgment is: The insured receives: The insurer receives:
--------------------------------------------------------------------------------------------------------------------------
No liability No fees Post-offer fees under the offer of judgment
 statute
--------------------------------------------------------------------------------------------------------------------------
75 percent or less of insurer's Pre-offer fees under section 627.428 Post-offer fees under the offer of judgment
offer statute
--------------------------------------------------------------------------------------------------------------------------
More than 75 percent of insurer's Pre-offer fees under section 627.428 No fees
offer, but not more than 100
percent
--------------------------------------------------------------------------------------------------------------------------
More than insurer's offer All fees under section 627.428 No fees
--------------------------------------------------------------------------------------------------------------------------

The most complex situation is where the insured recovers some damages, but the judgment is only 75 percent or less of the defendant's offer. (This is not such a case, because Nichols recovered nothing.) In that situation, both parties have a statutory entitlement to attorney's fees. Even then, however, the two statutes will not conflict: under section 627.428 the insured will be awarded attorney's fees incurred before the offer, and under the offer of judgment statute the insurer will be awarded fees incurred after the offer.
Given the lack of conflict between the statutes, the question becomes whether the expression of one thing (i.e., attorney's fees for insureds under sections 627.428 and 627.736) implies the exclusion of another (i.e., attorney's fees under the offer of judgment statute). As one court noted in holding that the offer of judgment statute applied in PIP cases, "[t]his rule that the inclusion of one thing means the exclusion of another, however, does not mean that the application of one precludes the additional application of another." Cahuasqui, 760 So.2d at 1105.
In cases involving other types of insurance, we have not interpreted section 627.428 as precluding the application of other attorney's fees provisions. To the contrary, we have authorized the application of the offer of judgment statute in an underinsured motorist case, even though it also fell within the scope of section 627.428. See Sarkis v. Allstate Ins. Co., 863 So.2d 210, 223 (Fla.2003). The district courts, too, have applied the offer of judgment statute to insurance cases, including those involving property insurance, see Pa. Lumbermens Mut. Ins. Co. v. Sunrise Club, Inc., 711 So.2d 593, 594 (Fla. 3d DCA 1998), liability insurance, Rabatie v. U.S. Sec. Ins. Co., 581 So.2d 1327 (Fla. 3d DCA 1989), and uninsured motorist benefits. See Weesner v. United Servs. Auto. Ass'n, 711 So.2d 1192, 1194 (Fla. 5th DCA 1998); Allstate Ins. Co. v. Manasse, 715 So.2d 1079, 1082 (Fla. 4th DCA 1998); Allstate Ins. Co. v. Silow, 714 So.2d 647, 651 (Fla. 4th DCA 1998); State Farm Mut. Auto. Ins. Co. v. Marko, 695 So.2d 874, 876 (Fla. 2d DCA 1997). One court has specifically rejected the argument that in an uninsured motorist case section 627.428 precludes an award of attorney's fees to the insurer under the offer of judgment statute. Weesner, 711 So.2d at 1194.
Nichols attempts to distinguish PIP suits from these other insurance cases on the ground that section 627.428 applies to PIP suits through a separate provision in the PIP statute, which incorporates it by reference. See § 627.736(8), Fla. Stat. (1999). According to Nichols, the Legislature's reason for including this separate provision must have been to foreclose the application of any other attorney's fees provisions to PIP suits. Otherwise, she argues, the provision would be redundant with section 627.428.
We find this argument unpersuasive. If the Legislature had enacted *1076 section 627.736(8) for the sole purpose of excluding all other attorney's fees provisions in PIP suits, then presumably it would have used exclusionary language, rather than the inclusive language it used. The words in the statute are the best guide to legislative intent. Here, section 627.736(8) gives no clue that the Legislature intended to prohibit application of the offer of judgment statute.

C. Access to Courts
Nichols argues that applying the offer of judgment statute to PIP suits will deny insureds access to courts and thus render the entire PIP system unconstitutional. Article I, section 21 of the Florida Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." We hold that even with the addition of the offer of judgment statute, the PIP statute withstands constitutional scrutiny.
We first considered the PIP statute's constitutionality in Kluger v. White, 281 So.2d 1 (Fla.1973). We interpreted the access-to-courts provision to mean that the Legislature cannot abolish a traditional common-law right of recovery "without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown." Id. at 4. Applying this standard, we held unconstitutional the portion of the PIP statute that provided an exemption from tort liability for certain property damage. Id. at 5. We cautioned, however, that if insurance had been made compulsory for property damage, the provision might have been upheld. Id.
One year after Kluger, we decided that the personal injury portion of the PIP statute, which does make insurance compulsory, "provides a reasonable alternative to the traditional action in tort" and therefore complies with the access-to-courts provision. See Lasky v. State Farm Ins. Co., 296 So.2d 9, 14 (Fla.1974). We reasoned that, under the PIP system, "[i]n exchange for his previous right to damages for pain and suffering ... with recovery limited to those situations where he can prove that the other party was at fault, the injured party is assured of recovery of his major and salient economic losses from his own insurer." Id. We emphasized that the insured can recover something "even where he himself is at fault," and that normally there will be "speedy payment" rather than prolonged litigation. Id.
As the PIP statute has been amended over the years, we have considered new challenges to its constitutionality. The most prominent example is Chapman v. Dillon, 415 So.2d 12 (Fla.1982). In the eight years between Lasky and Chapman, the Legislature substantially reduced the percentage of medical expenses and lost wages the insured may recover. Id. at 16. Deciding that the amendments were "reasonable attempts by the legislature to correct some of the practical problems which the no-fault law had posed," we again upheld the statute. Id. Although the changes meant that insureds would not necessarily recover all their economic losses, we explained that full recovery was not essential to the outcome in Lasky; "[i]nstead the crux in Lasky was that all owners of motor vehicles were required to purchase insurance which would assure injured parties recovery of their major and salient economic losses." Id. at 17. We determined that the statutory amendments "have not fundamentally changed this essential characteristic of the no-fault law." Id.
*1077 The question here is whether allowing PIP insurers to recover attorney's fees under the offer of judgment statute (enacted after Lasky and Chapman, see ch. 86-160, § 58, Laws of Fla.) would fundamentally change the essential characteristics of the PIP system and thereby deny access to courts. The only case in which we have analyzed an attorney's fees provision under the access-to-courts provision is Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985). There, we considered whether section 768.56, Florida Statutes (1981), which provided attorney's fees for the prevailing party in medical malpractice cases, violated the Florida Constitution. We held it did not, explaining:
The assessment of attorney fees against an unsuccessful litigant imposes no more of a penalty than other costs of proceedings which are more commonly assessed.... The statute may encourage an initiating party to consider carefully the likelihood of success before bringing an action, and similarly encourage a defendant to evaluate the same factor in determining how to proceed once an action is filed. We reject the argument that section 768.56 so deters the pursuit of medical malpractice claims that it effectively denies access to the courts to either party in malpractice actions. We find that an award of attorneys fees to the prevailing party is "a matter of substantive law properly within the aegis of the legislature," in accordance with the long-standing American Rule adopted by this Court. See Whitten v. Progressive Cas. Ins. Co., 410 So.2d 501, 504 (Fla. 1982). As difficult as the resulting application of this statute may be in certain cases, we conclude that section 768.56 is constitutional.
Id. at 1149 (citations omitted). As this passage makes clear, fee-shifting statutes generally do not deny access to courts. Id.
We recognize that the PIP statute is unique. It expressly abolished a traditional common-law right by limiting the recovery available to car accident victims. In exchange, the statute made PIP insurance compulsory and allowed recovery regardless of fault. As we have noted, "the purpose of the no-fault statutory scheme is to `provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption.'" Ivey v. Allstate Ins. Co., 774 So.2d 679, 683-84 (Fla.2000) (quoting Gov't Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)). This benefit balances the restrictions on recovery, making the PIP statute a reasonable alternative to the traditional tort action.
Applying the offer of judgment statute to PIP suits will not upset this balance. Insurers are entitled to attorney's fees only in two limited circumstances: (1) where the insured recovers nothing at trial, as happened in this case; and (2) where the insured rejects an offer that turns out to be at least one-third greater than the damages awarded at trial, when added to any attorney's fees, taxable costs, and prejudgment interest that the insured accumulated before the offer. In other words, for the offer of judgment statute to apply, the plaintiff either must have a very weak case, or must reject a very generous offer. Encouraging plaintiffs to settle in those circumstances, rather than pursue needless litigation, "is entirely consistent with the intent of the no-fault legislation of relieving our overburdened court system." Cahuasqui, 760 So.2d at 1105. We therefore hold that application of the offer of judgment statute to PIP suits does not render the PIP statute constitutionally infirm.

*1078 III. THE PARTICULARITY REQUIREMENT
The remaining issue is whether State Farm's settlement proposal satisfied the particularity requirement of Florida Rule of Civil Procedure 1.442. The rule requires that settlement proposals "state with particularity any relevant conditions" and also "state with particularity all nonmonetary terms." Fla. R. Civ. P. 1.442(c)(2)(C)-(D). As the district court noted below, "[t]his requirement of particularity is fundamental to the purpose underlying the statute and rule. A proposal for settlement is intended to end judicial labor, not create more." Nichols, 851 So.2d at 746.
The Fifth District decided that the language requiring Nichols to sign a general release was too ambiguous to satisfy rule 1.442. Nichols, 851 So.2d at 746. Accordingly, it reversed the trial court's award of attorney's fees under the offer of judgment statute. State Farm now challenges the Fifth District's ruling, claiming it conflicts with other district court decisions. We exercise our discretion to review the issue. See Savoie v. State, 422 So.2d 308, 312 (Fla.1982) (holding that "once this Court has jurisdiction of a cause, it has jurisdiction to consider all issues appropriately raised in the appellate process"). As explained below, we conclude that State Farm's settlement proposal failed to eliminate ambiguity regarding Nichols's outstanding UM claim and thus cannot support an award of attorney's fees.
As a threshold matter, we must determine whether a general release qualifies as one of the "relevant conditions" or "nonmonetary terms" of a settlement proposal, which must be described with particularity under rule 1.442. In this case, the Fifth District determined that a release is a condition and a nonmonetary term. See Nichols, 851 So.2d at 746. Most district courts agree. See, e.g., 1 Nation Tech. Corp. v. Al Teletronics, Inc., 924 So.2d 3, 6 (Fla. 2d DCA 2005); Dryden v. Pedemonti, 910 So.2d 854, 856 (Fla. 5th DCA 2005); Palm Beach Polo Holdings, Inc. v. Vill. of Wellington, 904 So.2d 652, 653 (Fla. 4th DCA 2005); Sink v. Emerald Hill Owners Ass'n, 903 So.2d 1047, 1048 (Fla. 1st DCA 2005); Boyd v. Nationwide Mut. Fire Ins. Co., 890 So.2d 1240, 1242 (Fla. 4th DCA 2005); Swartsel v. Publix Super Mkts., Inc., 882 So.2d 449, 453 (Fla. 4th DCA 2004); Hales v. Advanced Sys. Design, Inc., 855 So.2d 1232, 1233 (Fla. 1st DCA 2003).
In an earlier case, however, the Third District held that the releases and dismissal required by a settlement proposal "were not `conditions' of the settlement, but rather mechanical and legally inconsequential means of effecting it. They thus should be regarded as mere surplusage, the existence of which should not affect substantial rights." Earnest & Stewart, Inc. v. Codina, 732 So.2d 364, 366 (Fla. 3d DCA 1999). A few decisions, mostly from the Third District, have expressed this view. See Delpa, Inc. v. Martinez, 878 So.2d 455, 455 (Fla. 3d DCA 2004); Gulf Coast Transp., Inc. v. Padron, 782 So.2d 464, 465 (Fla. 2d DCA 2001); Kaplan v. Goldfarb, 777 So.2d 1208, 1208 (Fla. 3d DCA 2001).
Applying the plain meaning of rule 1.442, we agree with those courts that have treated releases as conditions or nonmonetary terms that must be described with particularity. A "condition" is traditionally defined as "a stipulation or prerequisite in a contract, will, or other instrument, constituting the essence of the instrument." Black's Law Dictionary 312 (8th ed.2004). A "term" is defined more broadly as "a contractual stipulation." Id. at 1509. We think it clear that when an offeror insists that an offeree sign a general release, the release becomes a stipulation *1079 or prerequisite of the contract. Even if the release does not constitute the essence of the settlement proposaland thus a condition under subdivision (c)(2)(C) of the ruleat the very least it qualifies as a nonmonetary term under subdivision (c)(2)(D).
Next we consider what degree of particularity the rule requires. Some courts have demanded "that an offeror state all the terms of ... any `general release' or, instead, attach a copy of the actual documents themselves to the offer." Swartsel, 882 So.2d at 453 (emphasis added). In this case, however, the Fifth District interpreted the rule as giving offerors the option of including "either the proposed language of the release or a summary of the substance of the release.'" Nichols, 851 So.2d at 746; see also Palm Beach Polo, 904 So.2d at 653 (following Nichols); Boyd, 890 So.2d at 1242 (requiring only a summary "sufficient to apprise [the offeree] of its terms").
We agree that a summary of the proposed release can be sufficient to satisfy rule 1.442, as long as it eliminates any reasonable ambiguity about its scope. As the Second District recently explained:
The rule intends for a proposal for judgment to be as specific as possible, leaving no ambiguities so that the recipient can fully evaluate its terms and conditions. Furthermore, if accepted, the proposal should be capable of execution without the need for judicial interpretation. Proposals for settlement are intended to end judicial labor, not create more.
Lucas v. Calhoun, 813 So.2d 971, 973 (Fla. 2d DCA 2002) (citation omitted). We recognize that, given the nature of language, it may be impossible to eliminate all ambiguity. The rule does not demand the impossible. It merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification. If ambiguity within the proposal could reasonably affect the offeree's decision, the proposal will not satisfy the particularity requirement.
We caution that rule 1.442 is not intended to revolutionize the language used in general releases. Traditionally, general releases have included expansive language designed to protect the offeror from unforeseen developments or creative maneuvering by the other party. Such language can be sufficiently particular to satisfy rule 1.442. For example, in Board of Trustees of Florida Atlantic University v. Bowman, 853 So.2d 507 (Fla. 4th DCA 2003), the Fourth District concluded that the language in a general release, "even though expansive, is typical of other general releases and is clear and unambiguous." Id. at 509. The rule aims to prevent ambiguity, not breadth.
State Farm's settlement proposal was too ambiguous to satisfy rule 1.442. The proposal stated, at the outset, that it would be "a full and final satisfaction and settlement of any and all of Nichols's claims and causes of action in, or arising out of, the above-styled case." Then it provided that Nichols would be required to "execute a General Release in favor of State Farm, which will be expressly limited to all claims, causes of action, etc., that have accrued through the date of Nichols's acceptance of this Proposal." At the time of the offer, Nichols not only had a pending PIP claim against State Farm, but also a UM claim arising from the same accident and of greater value. Although that claim was not technically "in ... the above-styled case," it could have been viewed as a claim "arising out of ... the above-styled case," because it arose from the same set of facts. State Farm's use of the *1080 broad phrase "all claims, causes of action, etc." exacerbated this ambiguity.
The district courts have consistently held, and we agree, that settlement proposals must clarify which of an offeree's outstanding claims against the offeror will be extinguished by any proposed release. See, e.g., Dryden, 910 So.2d at 856-57 (holding that the description of a general release was "not as clear and as certain as it should be," because it "could have been found ... to have extinguished" additional claims); Palm Beach Polo, 904 So.2d at 653 (holding that "the offer was legally deficient because plaintiff's acceptance could have extinguished other pending unrelated claims"); Morgan v. Beekie, 879 So.2d 110, 111 (Fla. 5th DCA 2004) (holding that an offer "cannot be a basis for an award of attorney's fees because it was both ambiguous and failed to make it clear that it was solely for personal injuries when the settlement of the property damage claim had not yet been fully consummated"). Because State Farm's offer failed to do so, it is invalid under rule 1.442 and cannot support an award of attorney's fees under the offer of judgment statute.

IV. CONCLUSION
We hold that the offer of judgment statute applies to PIP suits. In this case, however, State Farm's offer of judgment was too ambiguous to satisfy Florida Rule of Civil Procedure 1.442. We therefore approve in full the district court's decision reversing the award of attorney's fees.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, and BELL, JJ., concur.
ANSTEAD, J., concurs in result only with an opinion, in which QUINCE, J., concurs.
ANSTEAD, J., concurring in result only.
While I agree with the majority as to the ultimate outcome, I cannot agree with the majority's analysis or conclusion as to the use of the offer of judgment statute to circumvent the Legislature's clear intention to limit the entitlement to attorney's fees in PIP actions to the insured-claimant. By applying a broader and more general statute on fees the majority opinion has essentially eviscerated the specific legislative intent on fees, as well as fundamentally undermining the legislative scheme to assist Florida citizens in the collection of PIP benefits. One can only hope that the Legislature will recognize that its work has been undone, and act promptly to restore the balance of rights of citizen-insureds in their dealings with insurance companies who have now been armed with a powerful new economic weapon to discourage insureds from litigating legitimate claims.
Because I agree with the dissenting opinion of Judge Sawaya on this issue, I quote that opinion here and endorse its analysis:
I concur with the majority that the order awarding attorney's fees must be reversed. However, I respectfully disagree that the offer of judgment statute found in section 768.79, Florida Statutes, applies to PIP cases. In my view, application of section 768.79 to PIP cases would completely thwart and circumvent the purposes of the Florida Motor Vehicle No-Fault Law [n. 1] (the No-Fault Act) and PIP benefits. Moreover, I believe that the Legislature never intended a suit to recover PIP benefits to be an action for damages under section 768.79. Although I concur that this issue should be certified to the Florida Supreme Court, I believe that the question certified should be rephrased as follows to reflect the true nature of a suit to recover *1081 PIP benefits and answered in the negative:
May an insurer recover attorney's fees under rule 1.442, Florida Rules of Civil Procedure, and section 768.79, Florida Statutes, in an action brought by its insured to recover personal injury protection benefits under the insurance policy issued to the insured? [n. 1] §§ 627.730-.7405, Fla. Stat. (2001).
Application of the Offer of Judgment Statute Would Circumvent the Purposes of the No-Fault Law and Pip Benefits
In order to properly determine whether the offer of judgment statute found in section 768.79, Florida Statutes (2001), applies to PIP cases, it is necessary to start with the firmly established rule that "[l]egislative intent, as always, is the polestar that guides a court's inquiry under the Florida No-Fault Law...." United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 85 (Fla.2001). In my view, application of section 768.79 to PIP cases would completely circumvent and thwart the purposes of the No-Fault Act and the specific provisions relating to PIP benefits found in section 627.736. Therefore, it is clear to me that the Legislature certainly did not intend for section 768.79 to apply to PIP cases.
The Florida Legislature enacted the No-Fault Act to "provide for medical, surgical, funeral, and disability insurance benefits without regard to fault" and to limit "the right to claim damages for pain, suffering, mental anguish, and inconvenience." § 627.731, Fla. Stat. (2001). In order to accomplish this objective, section 627.736(1) requires that every owner of a motor vehicle obtain motor vehicle liability insurance that provides "personal injury protection ... for loss sustained ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle...." (Emphasis added). In exchange for abrogation of the right of the injured party to sue the tortfeasor for damages for pain, suffering, mental anguish, and inconvenience, the injured party is entitled to receive protection in the form of PIP benefits, which are limited to the following: eighty percent of all reasonable medical expenses so the insured will have access to necessary medical care and his or her medical providers will be assured of prompt payment; sixty percent of disability benefits so the insured and his or her family will have access to necessary funds for family support to replace the income lost as a result of any debilitating injury suffered by the insured; and certain death benefits to ensure prompt payment of necessary funeral expenses. § 627.736(1), Fla. Stat. (2001).
Because the injured insured is statutorily prohibited from recovering these costs from the tortfeasor whose wrongful conduct caused the injury or death, he or she is relegated to payment of these necessary costs from his or her insurance carrier unless the statutorily-imposed threshold of permanency is established. § 627.737, Fla. Stat. (2001). Thus, the injured insured becomes totally dependent on his or her insurance carrier for payment of these necessary costs. Shortly after the Legislature enacted the No-Fault Act in 1973, the Florida Supreme Court in Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla.1974), articulated the specific purposes of the No-Fault Act, stating that central to the legislative intent was the desire to enhance the public welfare through "an assurance that persons injured in vehicular accidents would receive *1082 some economic aid in meeting medical expenses and the like, in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls." Id. at 16 (emphasis added). In Ivey v. Allstate Insurance Co., 774 So.2d 679 (Fla.2000), the court held that "[w]ithout a doubt, the purpose of the no-fault statutory scheme is to `provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption.'" Id. at 683-84 (emphasis added) (quoting Government Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)).
The assurance of swift and virtually automatic provision of PIP benefits is accomplished through the requirements of section 627.736(4)(b), which provides that PIP insurance benefits shall be overdue if not provided within thirty days after the insurer is furnished written notice of a covered loss and of the amount of same. If the insurer allows a claim to become overdue, the insurer is subject to specific penalties, which include an award of attorney's fees to the insured. [n. 2] I emphasize that imposition of an award of fees against the insurance carrier is a penalty for failing to provide PIP benefits in accordance with the time limitations of the No-Fault Act. The court in Ivey explained the significance of the statutory provisions that allow for awards of attorney's fees to the injured insured in achieving the purpose of the No-Fault Act:
Florida law is clear that in "any dispute" which leads to judgment against the insurer and in favor of the insured, attorney's fees shall be awarded to the insured. See §§ 627.736(8), 627.428(1); see also Dunmore[ v. Interstate Fire Ins. Co., 301 So.2d 502, 503 (Fla. 1st DCA 1974)]. That is, under PIP law, the focus is outcome-oriented. If a dispute arises between an insurer and an insured, and judgment is entered in favor of the insured, he or she is entitled to attorney's fees. It is the incorrect denial of benefits, not the presence of some sinister concept of "wrongfulness," that generates the basic entitlement to the fees if such denial is incorrect. It is clear to us that the purpose of this provision is to level the playing field so that the economic power of insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in the courts.

Ivey, 774 So.2d at 684 (emphasis added).
[n. 2] United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 87 (Fla.2001) ("Under the language of the Florida No-Fault Law, an insurer is subject to specific penalties once a payment becomes `overdue'; the penalties include ten percent interest and attorneys' fees."); January v. State Farm Mut. Ins. Co., 838 So.2d 604 (Fla. 5th DCA 2003).
In Nationwide Mutual Fire Insurance Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla.2000), the court, in holding unconstitutional the requirement of mandatory arbitration and awards of attorney's fees to the prevailing party under section 627.736(5), again emphasized the importance of the provision for fees to the insured under section 627.428 by explaining:
An objective of Florida's Motor Vehicle No-Fault Law was to provide persons injured in an accident with prompt payment of benefits. [Lasky v. State Farm Ins. Co., 296 So.2d 9, 16 (Fla.1974).] Similarly, the legislative objective of section 627.428(1), Florida Statutes, which provides for an award *1083 of attorney fees against insurers who wrongfully deny benefits, was to discourage insurance companies from contesting valid claims and to reimburse successful insureds for their attorney fees when they are compelled to sue to enforce their insurance contracts. See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 833 (Fla. 1993).

Id. at 59.
There is no provision for an award of attorney's fees to the insurer in any of the provisions of the No-Fault Act and, I believe, for good reason. Such a provision would thwart the purpose of the PIP provisions of the statutory no-fault scheme by unleveling the playing field by giving the insurance companies far too much leverage over the insureds, who are dependent on the fair and speedy payment of their necessary medical bills from their insurance carrier so they will continue to have access to necessary medical care. Hence, an award of fees to the insurer under section 768.79 would circumvent the purposes of assuring swift and virtually automatic payment of benefits and, instead of discouraging insurers from contesting valid claims, it would have the effect of encouraging the contest of valid claims. Furthermore, an award of fees to the insurer under section 768.79 would completely vitiate the purpose of imposing a penalty on the insurer under section 627.428. Moreover, because section 768.79 is punitive in nature, [n. 3] an award of fees to the insurer would actually impose a penalty on the insured. I do not believe that the Legislature intended this result in enacting the No-Fault Act or section 768.79.
[n. 3] See Hilyer Sod, Inc. v. Willis Shaw Express, Inc., 817 So.2d 1050, 1054 (Fla. 1st DCA 2002) ("Moreover, the offer of judgment statute and rule should be strictly construed because the procedure is in derogation of the common law and is penal in nature."), approved, 849 So.2d 276 (Fla.2003); Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776, 778 (Fla. 4th DCA 1999) (noting that "section 768.79 and Florida Rule of Civil Procedure 1.442 are punitive in nature ....") (citing TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 614 (Fla.1995); Loy v. Leone, 546 So.2d 1187, 1189 (Fla. 5th DCA 1989)).
I also believe that imposition of attorney's fees on the insureds pursuant to section 768.79 could totally offset the insureds' benefit awards for these essential medical costs and leave the insureds with unpaid medical bills that could potentially cause a cessation of their medical care. In addition, imposition of fees against the insureds could leave the insureds actually owing money to their insurance company. In essence, the insureds could lose the benefits of the coverage for which they paid a premium and be saddled with a debt owed to their insurance company. Surely, the Legislature did not intend for such calamities to occur to insureds who were, according to the court in Lasky, given "an assurance that [they] would receive some economic aid in meeting medical expenses and the like ...." Imposition of fees pursuant to section 768.79 would, in my view, constitute a breach of that assurance and could potentially place many injured insureds in "dire financial circumstances with the possibility of swelling the public relief rolls"a circumstance the court in Lasky indicated should not occur.
Moreover, the stated purpose of the No-Fault Act is to "provide medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance *1084 securing such benefits ...." § 627.731, Fla. Stat. (2001). This purpose is accomplished through the provisions of section 627.733, which require that every owner of a motor vehicle "maintain security as required by subsection (3)...." § 627.733(1), Fla. Stat. (2001). Subsection (3) provides that "[s]uch security shall be provided: (a) [b]y an insurance policy ... which provides the benefits and exemptions contained in ss. 627.730-627.7405." § 627.733(3)(a), Fla. Stat. (2001). Section 627.736 contains the provisions that specify what the security requirements are: medical, disability and death benefits. As the court explained in Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla.1977):
The provision of Section 627.733, that every owner or registrant of a motor vehicle required to be registered and licensed in the state shall maintain security, must be read in context with the rest of the Florida Automobile Reparations Reform Act. In this context, the purpose of the required security is clearly to provide financial responsibility to pay any "no-fault" personal injury protection benefits due under Section 627.736.

Id. at 1173 (emphasis added).
The point I am making is that injured insureds are provided security for the payment of their benefits. The dictionary gives the plain and ordinary meaning of the term "security": "1. Freedom from risk or danger; safety. 2. Freedom from doubt, anxiety, or fear; confidence. 3. Something that gives or assures safety." The American Heritage Dictionary 109 (2d ed.1985). Injured insureds who, according to Lasky, were given "an assurance ... of economic aid" should not be subjected to the uncertainties of the offer of judgment statute, which requires the injured party to make a calculated guess at the amount of benefits a jury might award and to make another calculated guess whether the award will exceed the statutory percentage provided in the statute. Payment of the injured insureds' necessarily-incurred medical bills and continuation of their medical care is far too important to be subjected to the uncertainties of the offer of judgment statute. In my view, application of section 768.79 to PIP cases, with its inherent uncertainties and risks, has completely abrogated the security and the assurance that injured insureds were promised by the Legislature through the No-Fault Act. This is not what the Legislature intended.
I further believe that those insureds who file suit to recover their benefits in small claims court without the assistance of counsel to make this burdensome calculated guess will leave insurance companies, which are represented by attorneys, with an unfair advantage. I also believe that this will discourage many insureds from attempting to obtain the benefits for which they paid a premium, leaving the insurance companies that collected their premiums with a windfall.
The Florida Supreme Court recognized that section 627.428(1) is a "one-way street offering the potential for attorneys' fees only to the insured or beneficiary." Danis Indus. Corp. v. Ground Improvement Techniques, Inc., 645 So.2d 420, 421 (Fla.1994). Because of the imposition of fees pursuant to section 768.79, instead of traveling down an unobstructed one-way street to recovery as intended by the Legislature, many injured insureds may find themselves stuck in front of a toll booth erected and maintained by their insurance companies without sufficient funds for passage through. This certainly is not the intention of the Legislature.

*1085 Section 768.79 is part of Chapter 768, Florida Statutes, wherein the Legislature included section 768.71(3), which provides that "[i]f a provision of this part is in conflict with any other provision of the Florida Statutes, such other provision shall apply." The PIP statute found in section 627.736 specifically provides that in PIP cases, "the provisions of s. 627.428 shall apply...." § 627.736(8), Fla. Stat. (2001) (emphasis added). This provision is significant because section 627.428 would apply to PIP cases regardless of the provisions of section 627.736(8). In my view, the Legislature intended that the specific provisions of section 627.428 should apply over the general provisions of section 768.79. In other words, specifically including section 627.428 in the provisions of section 627.736(8), to the exclusion of any other statutory provision for fees, clearly indicates the Legislature's intention that section 627.428 be the exclusive authority for an award of fees in PIP cases. See, e.g., Frazier v. Metropolitan Dade County, 701 So.2d 418 (Fla. 3d DCA 1997) (holding that section 768.71(3) applied to a conflict between the wrongful death statute (the more specific statute) under which a non-negligent survivor's recovery cannot be reduced due to another survivor's negligence, and the comparative negligence statute (the more general statute), which dictates that each party's liability is limited to that party's percentage of fault, so that the comparative fault statute had to yield to the wrongful death statute).
I note that the Legislature recently amended section 627.736 by adding subsection (11), which requires that the insured provide the insurer with written notice of an intent to file a claim for benefits. Ch. 2001-271, § 6, at 1759, Laws of Fla.; § 627.736(11)(a), Fla. Stat. (2001). Section 627.736(11)(d) provides that "[t]he insurer shall not be obligated to pay any attorney's fees if the insurer pays the claim within the time prescribed by this subsection." In my view, this provision reaffirms the Legislature's intention that an award of fees to the insured be a one-way street, especially in light of the fact that the Legislature again failed to make provision for fees to the insurer.
Nichols v. State Farm Mutual, 851 So.2d 742, 747-51 (Fla. 5th DCA 2003) (SAWAYA, J., concurring in part, dissenting in part).
QUINCE, J., concurs.