LAGOA, Judge.
 

 Eastern Atlantic Realty and Investment Inc. (“Eastern”) appeals from a final judgment determining it was not entitled to a real estate brokerage commission. Biscayne Joint Venture, Ltd. (“BJV”) appeals from a final order denying an award of attorneys’ fees and costs. The appeals have been consolidated. For the reasons set forth below, we affirm the trial court’s final judgment against Eastern, and we reverse the trial court’s denial of attorneys’ fees and costs.
 

 
 *1217
 
 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 BJV, the owner of property located in Miami-Dade County, listed its property for sale with a broker, Blue Estate Realty.
 
 [1]
 
 The property, however, was subject to a right of first refusal provision contained in a lease agreement with the tenant, Biscayne Rehabilitation Institute (“BRI”)
 

 Eastern, a commercial real estate broker, submitted a purchase and sale agreement on behalf of GRO Capital, LLC (“GRO”) for the property (hereafter the “GRO agreement”), which contained the following provision:
 

 This agreement shall be subject to the right of first refusal to purchase the property provided for under that certain lease agreement dated April 7, 1995 between Biscayne Rehabilitation Institute [“BRI”] and United of Omaha Life Insurance Company, as subsequently amended (the “BRI Lease Agreement”).
 

 Under the terms of the GRO agreement, the investigation period was to commence upon BRI’s waiver of the right of first refusal,
 
 [2]
 
 and GRO was required to provide an additional $95,000.00 deposit upon BRI’s waiver. The GRO agreement further stated that Blue Estate Realty and Eastern were deemed the Seller’s agents
 
 [3]
 
 and the Seller agreed to pay Blue Estate Realty and Eastern each a three percent commission of the purchase price.
 
 [4]
 

 As required by its lease, BJV informed BRI of the GRO agreement. BRI subsequently exercised its right of first refusal and delivered to BJV its own offer to purchase the property. BRI’s offer included the same purchase price, closing date, and deposit as set forth in the GRO agreement. BRI’s offer, however, did not include a commission to Eastern.
 

 BJV rejected BRI’s offer, and BRI ultimately filed a declaratory action against both BJV and GRO, as well as a lis pen-dens on the property. The declaratory action sought a judicial determination as to whether BRI had complied with the lease’s right of first refusal provision and was therefore entitled to purchase the property. GRO filed a cross-claim against BJV seeking declaratory relief as to its rights under its agreement with BJV.
 

 After approximately ten months of litigation, the parties exchanged releases and entered into a Global Settlement Agreement containing the following provisions:
 
 *1218
 
 (1) BRI acquired the right to purchase the property; (2) all litigation between BRI and BJV ceased; (3) GRO received $50,000 in exchange for its release and extinguishment of any rights under the agreement between GRO and BJV; and (4) GRO received a recordable right of first refusal.
 

 BRI subsequently assigned its right to purchase the property to GSOMR, LLC (“GSOMR”), an entity formed to purchase and manage the property. GSOMR purchased the property pursuant to a Purchase and Sale Agreement that contained terms different from those contained in either the GRO or the BRI agreement. Indeed, GSOMR paid more than $300,000 for the property. Moreover, unlike the GRO agreement, the new purchase and sale agreement required GSOMR to pay all the closing costs, did not allow retention of deposits, contained a $5,000.00 a day penalty to extend the closing, and did not provide for proration of real estate taxes.
 

 At closing, BJV’s listing broker, Blue Estate Realty, was paid slightly less than the three percent commission required under the Listing Agreement. When Eastern demanded a commission payment from BJV relating to GSOMR’s purchase, BJV and GSOMR filed suit against Eastern for tortious interference with a business and contractual relationship and for declaratory relief. Eastern, in turn, sued BJV for breach of agreement and quantum meruit.
 
 [5]
 
 The cases were consolidated.
 

 Prior to trial, BJV made a Proposal for Settlement (the “proposal”) for $20,000 to resolve:
 

 [A]ll claims asserted or that could have been asserted by Eastern against BJV and/or GSMOR [sic], LLC in these consolidated actions and all claims, if any, asserted or that could have been asserted by BJV and/or GSMOR [sic], LLC against Eastern in these consolidated actions.
 

 The proposal required that “[u]pon acceptance of this proposal and payment of $20,000.00, Eastern will immediately dismiss its claims against BJV in this action and BJV and GSOMR, LLC will immediately dismiss their claims against Eastern in this action.” The proposal further required the parties to execute and exchange mutual general releases “in favor of the other, including their respective officers, director [sic], employees, affiliated companies, parents, subsidiaries, successors, predecessors, attorneys, accountants and agents, for any and all claims, including claims for attorney’s fees and costs, arising out of the matters which are the subject of this action.” The proposal identified BJV as the party making the offer to pay Eastern. $20,000. Eastern declined BJV’s offer.
 

 Following a bench trial, the trial court ruled against Eastern, finding that it was not the procuring cause of the transaction with GSOMR and could not recover a commission. BJV and GSOMR moved for attorneys’ fees and costs, pursuant to Florida Rule of Civil Procedure 1.442 and sections 768.79 and 57.041, Florida Statutes (2005), based on the proposal. The trial court denied the motion for fees and costs.
 
 [6]
 
 In its written order, the trial court concluded that the proposal was sufficiently ambiguous to preclude its enforceability and that the proposal, as drawn, constituted a joint proposal on behalf of BJV and GSOMR that failed to apportion the
 
 *1219
 
 amount attributable to each party. These appeals ensued.
 

 II.
 
 ANALYSIS
 

 A.
 
 APPEAL
 

 On appeal, Eastern contends that it was the procuring cause of the agreement between GSOMR and BJV. According to Eastern, BJV would not have sold the property to BRI but for the fact that GRO’s agreement triggered BRI’s exercise of its right of first refusal. We find Eastern’s argument without merit and conclude that competent, substantial evidence supports the trial court’s finding that Eastern was not the procuring cause of the sale of the property.
 
 [7]
 

 Paragraph 15 of the GRO agreement explicitly provided for a commission to Eastern only “with respect to the purchase and sale of the property as contemplated under the agreement.”
 
 [8]
 
 Other than paragraph 15, no other contractual provision creates an entitlement to a commission payment to Eastern. This case is therefore distinguishable from
 
 City Nat'l Bank of Miami Beach v. Lundgren,
 
 307 So.2d 870 (Fla. 3d DCA 1975), where the owner agreed to pay the broker a commission for finding any purchaser that was ready, willing and able. In
 
 Lundgren,
 
 this Court stated, in dicta, that the owner was required to pay a commission regardless of whether the buyer was a third party brought by the broker or the holder of the right of first refusal.
 

 Here, the GRO agreement does not provide for payment of a commission in the event of BRI’s exercise of its right of first refusal or a default or an abandonment of the agreement by the parties. Where contractual provisions are clear and unambiguous, these terms control and must be given their plain and ordinary meaning.
 
 See Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.,
 
 985 So.2d 1159, 1161 (Fla. 3d DCA 2008). Given that paragraph 19 of the GRO agreement states that the agreement is “the entire agreement between the parties with respect to the transaction contemplated herein, and it supersedes all prior understandings or agreements between the parties,” Eastern cannot recover other than as contemplated by the GRO agreement. Indeed, no binding agreement was formed between GRO and BJV as the initial condition precedent — BRI’s waiver — never occurred.
 
 See Mitchell v. DiMare,
 
 936 So.2d 1178 (Fla. 5th DCA 2006) (where a agreement for the sale of real property expressly states that it is subject to a right of first refusal, no binding agreement can be formed unless the right of first refusal is not exercised). Moreover, GRO relinquished its rights under the GRO agreement pursuant to a global settlement agreement. Because the “purchase and sale of the property as contemplated under the [GRO] agreement” did not occur, Eastern is not entitled to a commission.
 

 Accordingly, because competent, substantial evidence supports the trial court’s finding that Eastern was not the procuring cause of the subsequent sale to GSOMR,
 
 *1220
 
 we affirm the trial court’s entry of final judgment as to Eastern.
 

 B.
 
 CROSS-APPEAL
 

 We now turn to BJV’s cross-appeal in which it contends that the trial court erred in denying its motion for fees and costs.
 

 1.
 
 APPLICATION OF SECTION 768.79 and RULE l.U%
 

 Section 768.79, Florida Statutes (2007), provides for an award of attorneys’ fees and reasonable costs in any civil action for damages where a defendant files an offer of judgment that is not accepted by the plaintiff within thirty days. Of relevance to the cross-appeal, section 768.79(2) provides that an offer must: (1) be in writing and state that it is being made pursuant to the section; (2) name the party making it and the party to whom it is being made; (3) state with particularity the amount offered to settle a claim for punitive damages, if any; and (4) state its total amount.
 

 Florida Rule of Civil Procedure 1.442 implements section 768.79. Pursuant to this Rule, a proposal for settlement must contain the following information:
 

 (A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
 

 (B) identify the claim or claims the proposal is attempting to resolve;
 

 (C) state with particularity any relevant conditions;
 

 (D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;
 

 (E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
 

 (F) state whether the proposal includes attorneys’ fees and whether the attorneys’ fees are part of the legal claim; and
 

 (G) include a certificate of service in the form required by rule 1.080(f).
 

 Fla. R. Civ. P. 1.442(c)(2).
 

 Moreover, subsection (c)(3) of the Rule states:
 

 A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party.
 

 On cross-appeal, BJV raises two issues. We find both issues meritorious and address each separately.
 

 2.
 
 BJV’S PROPOSAL FOR SETTLEMENT WAS NOT AMBIGUOUS
 

 BJV first asserts that the trial court erred in finding that the proposal was sufficiently ambiguous to preclude its enforceability. We agree with BJV.
 
 [9]
 
 In concluding that the proposal was ambiguous, the trial court relied on
 
 State Farm Mut. Auto. Ins. Co. v. Nichols,
 
 932 So.2d 1067 (Fla.2006), and
 
 Sink v. Emerald Hill Owners Ass’n, Inc.,
 
 903 So.2d 1047 (Fla. 1st DCA 2005). Neither supports the trial court’s conclusion regarding the specific proposal at issue here.
 

 In
 
 Nichols,
 
 two pending claims existed at the time the settlement proposal at issue in that case was made: a PIP claim against State Farm and an uninsured motorist claim arising out of the same accident. The Florida Supreme Court held that the proposal for settlement was ambiguous because the release was unclear as
 
 *1221
 
 to whether or not it included the second claim.
 
 [10]
 

 In this case, no such ambiguity exists. The language of the proposed release was specifically limited to damages arising out of the underlying consolidated action. No other actions were pending between the parties. Moreover, the proposal clearly identified the parties to be released and the scope of that release.
 

 While Rule 1.442 requires a proposal for settlement to state with particularity any relevant conditions and all non-monetary terms, the Rule “merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification.”
 
 Carey-All Transp., Inc. v. Newby,
 
 989 So.2d 1201, 1206 (Fla. 2d DCA 2008),
 
 review denied,
 
 5 So.3d 669 (Fla.2009) (quoting
 
 Nichols,
 
 932 So.2d at 1079). Moreover, a proposal for settlement does not require more than “a summary of the proposed release.”
 
 Nichols,
 
 932 So.2d at 1079.
 

 Here, BJV’s proposal was clear and unambiguous. In exchange for Eastern’s dismissal of its claims against BJV, Eastern would receive $20,000 and BJV and GSOMR would dismiss their claims against Eastern related to the pending action. Further, BJV, GSOMR, and Eastern would execute mutual general releases in favor of the other for any and all claims, including claims for attorneys’ fees and costs that arose out of the subject of this action. Eastern was not required to release all rights to sue the defendants based on any causes of action accruing in the-future. We therefore find that the trial court erred in finding that the settlement proposal was ambiguous.
 

 3.
 
 BJV’S PROPOSAL FOR SETTLEMENT WAS NOT JOINTLY MADE
 

 With regard to the second issue raised in its cross-appeal, BJV contends that the trial court erred in concluding that the proposal was jointly made. In response, Eastern contends that a “joint” proposal was created by the identification of both BJV and GSOMR in the body of the proposal. We conclude, that the trial court erred in finding that the proposal constituted a joint proposal on behalf of BJV and GSOMR that failed to apportion or differentiate the amount offered between them. While both BJV and GSOMR are identified in the proposal, the proposal explicitly states that BJV was the party making the offer to pay Eastern $20,000. Indeed, as Eastern did not seek any affirmative relief against GSOMR, no reason existed for GSOMR to offer payment of any monies to Eastern.
 

 Moreover, the trial court’s reliance on
 
 Willis Shaw Express, Inc. v. Hilyer Sod, Inc.,
 
 849 So.2d 276 (Fla.2003), is misplaced. In
 
 Willis Shaw,
 
 the proposal for settlement identified both plaintiffs as expressly extending the offer. Their joint proposal, however, did not specify the amounts and terms each plaintiff was requesting. In concluding that “[a] strict construction of the plain language of rule 1.442(c)(3) requires that offers of judgment made by multiple offerors must apportion the amounts attributable to each offerer,” the Florida Supreme Court held that “under the plain language of rule 1.442(c)(3), an offer from multiple plaintiffs must apportion the offer among the plaintiffs.”
 
 Id.
 
 at 278-79. Where “two offerors make a proposal for settlement to one offeree, the
 
 *1222
 
 offeree is entitled to know the amount and terms of the offer that are attributable to each offeror in order to evaluate the offer as it pertains to that party.”
 
 Allstate Ins. Co. v. Materiale,
 
 787 So.2d 173, 175 (Fla. 2d DCA 2001). The plain language of Rule 1.442(c)(3) only requires apportionment if the proposal is made jointly by several parties. Because the proposal at issue here was made solely by BJV, no apportionment between BJV and GSOMR was required.
 

 Accordingly, we affirm the trial court’s finding that Eastern was not the procuring cause of the sale and was not entitled to a broker’s commission. As to the cross-appeal, we reverse and remand for a determination of BJVs reasonable attorneys’ fees and costs.
 

 Affirmed in part and reversed in part.
 

 [1]
 

 . Pursuant to the Listing Agreement, Blue Estate Realty was to be paid a 3% commission.
 

 [2]
 

 . Paragraph 7 of BRI's Lease required BRI to exercise its right of first refusal by providing BJV with written notice "at the same price and on the same terms” as the proposed sale.
 

 [3]
 

 . The agreement defined BJV as "Seller” and GRO as "Buyer."
 

 [4]
 

 . Specifically, paragraph 15 of the GRO agreement provided:
 

 Seller hereby warrants to the Buyer that Seller has not engaged or dealt with any broker or agent other than Blue Estate Realty and Eastern Atlantic Realty & Investments, Inc. with respect to the purchase and sale of the Property as contemplated by this Agreement. Seller shall indemnify and hold the Buyer harmless against any and all liability, cost, damage and expense (including, but not limited to, attorneys' fees and costs of litigation and appeals) Buyer shall ever suffer or incur because of any claim by any broker or agent claiming to have dealt with the Seller, whether or not meritorious, for any commission or other compensation with respect to this Agreement or to the purchase and sale of the Property in accordance with this Agreement. Seller acknowledges that Blue Estate Realty and Eastern Atlantic Realty & Investments are the agents of Seller, and Seller agrees to pay such agents each a commission of 3% of the Purchase Price.
 

 [5]
 

 . Eastern did not file suit against GSOMR.
 

 [6]
 

 . On cross-appeal, BJV admits that the trial court did not err in denying fees to GSOMR as the proposal was made only on behalf of BJV. Because the proposal was not made by both BJV and GSOMR to Eastern, GSOMR was not entitled to fees and is not appealing the trial court's denial.
 

 [7]
 

 . A trial court’s determination as to whether a broker was the procuring cause of the sale will not be disturbed on appeal if supported by competent, substantial evidence.
 
 Rotemi Realty, Inc. v. Act Realty Co.,
 
 911 So.2d 1181, 1189 (Fla.2005);
 
 Brickell Bayview Real Estate, Inc. v. Cooper,
 
 691 So.2d 1094 (Fla. 3d DCA 1997).
 

 [8]
 

 . Paragraph 1 of the GRO agreement states that "[sjubject to all of the terms and conditions of this Agreement, the Seller [BJV] will sell to the Buyer [GRO] and the Buyer [GRO] will purchase from the Seller [BJV] the Property, together with all appurtenances, rights, easements, and rights of way incident thereto.”
 

 [9]
 

 . In determining whether a proposal for settlement comports with Rule 1.442 and section 768.79, appellate courts apply the de novo standard of review.
 
 Miami-Dade County v. Ferrer,
 
 943 So.2d 288, 290 (Fla. 3d DCA 2006).
 

 [10]
 

 . Because the
 
 Sink
 
 decision recites no facts that reveal how the proposal in that case was sufficiently ambiguous to preclude its enforceability,
 
 Sink
 
 offers no guidance as to the specific proposal at issue here.