MAY, C.J.
 

 The plaintiff appeals a remittitur entered after he received a favorable verdict in his claim arising from a collision between his motorcycle and a car driven by the defendant. He argues the trial court erred in remitting the verdict. We agree and reverse. In the cross-appeal, the defendant argues the trial court erred in denying his motion for new trial. We disagree and affirm the order denying his motion for new trial.
 

 The nineteen-year-old plaintiff and his passenger were travelling eastbound on a motor scooter when they collided with a car driven by the defendant. According to the scooter passenger, the defendant backed out of his driveway, through the westbound lanes, and into the eastbound lane of traffic about three to four feet ahead of the scooter. It had been raining,
 
 *1186
 
 and the plaintiff was unable to avoid the accident.
 

 According to the defendant and his girlfriend, who was a passenger in the car, the accident occurred as they were turning into their driveway. The car passenger testified that the plaintiff was speeding. A neighbor and the first responder’s records contradicted the car passenger’s testimony concerning the time of the accident. In fact, the neighbor, who was sitting outside her home at the time of the accident, also conflicted with the defendant’s testimony concerning his direction of travel. Unfortunately, the neighbor only heard, but did not see, the accident.
 

 United Auto Insurance originally filed a subrogation action for property damage against the plaintiff. The plaintiff answered and counterclaimed for personal injuries he sustained. By agreement, the case was transferred to circuit court, where the counterclaim was severed, and the caption restyled to reflect the scooter driver as the plaintiff and the car driver as the defendant.
 

 Both parties presented testimony from accident reconstructionists. The defendant’s expert testified that the scooter’s maximum speed was 31 miles per hour, and he saw no evidence to suggest the scooter was speeding or in the westbound lane of traffic. Based on photographs, the defense expert opined that both the car and scooter were traveling eastbound and the car was in the process of making a left turn into a driveway when the collision occurred. The expert did concede, however, that the damage was also consistent with the car backing out of a driveway.
 

 The plaintiff was taken to the hospital with swelling and bruising around the right eye. A CT scan of his face indicated a right lateral wall orbit fracture. The plaintiff also sustained a comminuted fracture of the right femur. The plaintiff underwent surgery to insert a rod in his leg, which was stabilized with locking screws. He underwent a second surgery to repair his facial fractures with a titanium plate and screws. He spent one week in the hospital, two months on bed-rest, six weeks on crutches, and underwent rehabilitation therapy.
 

 The plaintiff is able to walk, but continues to have problems with his leg. In cold weather, he experiences a sharp, stabbing pain throughout the leg, which prevents him from engaging in sports activities. He is unable to run. Prior to the accident, the plaintiff suffered from headaches, but four to five months after the accident, he began to suffer migraines in the area of the right orbital injury. According to the mortality tables, the plaintiff is anticipated to live another 54.2 years.
 

 Approximately a year and a half after the accident, the plaintiff was involved in another car accident where he hit the opposite side of his head. He testified the second collision did not affect the frequency or severity of his migraines.
 

 More than a year after the first accident, and three months before the second accident, the plaintiff became employed. His employer testified that the plaintiff suffered from severe headaches during his employment. The employer observed multiple physical manifestations of the plaintiffs migraines, resulting in the plaintiff missing approximately one day a week from work.
 

 However, the plaintiff did not report his headaches to any doctor until the day he was involved in the second accident, nearly two years after the first accident. During the defense medical expert’s evaluation, the plaintiff reported nearly constant headaches in the area of his orbital surgery.
 

 The plaintiff returned to the facial surgeon approximately seven months after the second accident, complaining of right-
 
 *1187
 
 sided headaches focused around the orbit and temple area. The surgeon opined there was a correlation between the facial injury and headaches, which could potentially last for years or a lifetime. The surgeon explained that the plaintiff sustained a permanent injury from the accident. Despite the surgery, his face would never be like it was before the accident. The plaintiff would need approximately fifteen thousand dollars of future medical care for the facial injury.
 

 The defendant had the plaintiff examined by a dentist, board certified in cranial facial pain. The dentist opined the plaintiffs orbital fracture and subsequent surgery was causing the headaches. The dentist felt that the headaches were classic for the injuries sustained. The dentist considered this a soft-tissue injury that might be reduced by injections at a future cost of two thousand dollars, but there was no guarantee the injections would be effective.
 

 A neurologist retained by the defense also examined the plaintiff. The neurologist opined that the plaintiffs headaches were not causally related to the accident. Nevertheless the neurologist conceded the plaintiff suffered trauma, lost consciousness, and amnesia — all relevant signs of a severe head injury.
 

 The plaintiffs orthopedic surgeon opined that he had suffered a permanent injury to his right leg and that fractures of the femur do not heal exactly the same as before the accident. The defense expert found the victim suffered five-percent impairment to his body from the leg fracture, but he found no functional limitation. He agreed that the plaintiffs past medical expenses were reasonable, necessary, and related to the accident.
 

 The jury returned a special interrogatory verdict in favor of the plaintiff, finding the defendant was negligent and one hundred percent at fault. It awarded the plaintiff $18,992.86 in past medical expenses, $1,595.00 in past lost earnings, and $45,000.00 for future medical expenses. The jury also found the plaintiff sustained a permanent injury and awarded $200,000.00 in past, and $375,000.00 in future, pain and suffering. The total amount of the award was $640,587.56.
 

 Following the verdict, the plaintiff sought entry of a final judgment. The defendant moved for a new trial, mistrial, judgment in accordance with the motion for directed verdict, and remittitur. The plaintiff acknowledged the award of future medical expenses was too high and should be reduced to $17,000.00, but opposed any remittitur for the intangible damage awards. The court denied the defendant’s motions for new trial, mistrial, and renewed motion for directed verdict. It remitted the award of future medical expenses to $17,000 per agreement, and also remitted the intangible damage awards by forty percent. The plaintiff rejected the remittitur and filed this appeal. The defendant cross-appealed the order denying the defendant’s motion for new trial.
 

 After the appeal was filed, the defendant sought and obtained an order relinquishing jurisdiction to the trial court to articulate findings in support of the remittitur. The trial court rendered an order with the following findings:
 

 (a) the amount awarded is indicative of prejudice or compassion on the part of the jury not necessarily against the parties but against Defendant’s counsel;
 

 (b) it appeared to this court that the trier of fact misconceived the merits of the case relating to the amounts of damages recoverable, including but not limited to the long duration of the Plaintiff in seeking medical treatment for such damages;
 
 *1188
 
 (c)the amount awarded did not bear a reasonable relation to the amount of damages proved and the injury suffered.
 

 The plaintiff supplemented the record to include, among other things, the order entered during relinquishment.
 
 [1]
 

 We review orders of remittitur for an abuse of discretion.
 
 Weinstein Design Grp., Inc. v. Fielder,
 
 884 So.2d 990, 1002 (Fla. 4th DCA 2004).
 

 The plaintiff argues the record does not support, and the trial court failed to make, the requisite findings to support the entry of a remittitur. The defendant responds that the plaintiff cannot demonstrate an abuse of the trial court’s discretion. Further, the defendant suggests that any argument concerning the lack of findings in the original remittitur is now moot because of the order entered during the relinquishment period. We find not only the original remittitur failed to contain the requisite findings, but the record does not support, and the order entered on relinquishment fails to justify, a remittitur in this case.
 

 Section 768.74, Florida Statutes (2010), governs remittiturs and additurs.
 

 (1) In any action ... it shall be the responsibility of the court, upon proper motion, to review the amount of [an] award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.
 

 (2) If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be.
 

 (5) In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
 

 (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
 

 (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
 

 (c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
 

 (d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
 

 (e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
 

 § 768.74, Fla. Stat. (2010). Trial courts are required to state their reasons justifying a remittitur.
 
 Winn-Dixie Stores, Inc. v. Robinson,
 
 472 So.2d 722, 725 (Fla.1985) (citing
 
 Wackenhut Corp. v. Canty,
 
 359 So.2d 430, 434 (Fla.1978)).
 

 Here, the motion for remittitur spoke in general “buzz” words: “grossly excessive,” “contrary to the manifest weight of the evidence,” “shocks the judicial conscience,” and “clearly demonstrates that the jury was unduly influenced by passion or prejudice.” The motion contained virtually no facts to support those characterizations with the exception that it claimed the plaintiff had failed to establish that his headaches were caused by the accident or
 
 *1189
 
 the amount of future medical expenses. The original order of remittitur failed to include any reason for its entry.
 

 On relinquishment, the trial court entered a new order. It too repeated the “buzz” words, but did not give much more factual support for its conclusions. The order, while offering only conclusory justifications, found the verdict reflected: (1) prejudice against defense counsel; (2) the jury misconceived the case because the plaintiff took a long time to seek medical treatment; and (3) the verdict did not bear a reasonable relation to the damages proved. Noticeably absent from the order was any factual basis for those findings. The conclusions merely mimicked the statutory factors, but did not provide record support for the remittitur.
 

 At various times throughout the trial, plaintiffs counsel objected to certain strategies and tactics of defense counsel resulting in the trial court’s admonishment of the attorney, but the record fails to reflect the existence of jury prejudice against defense counsel. While the plaintiff may have taken some time to seek medical treatment for his migraines, he was otherwise immediately treated and underwent two surgeries to repair the facial and leg fractures. Experts testified to the plaintiffs migraines having been caused by the facial injury. Other testimony reflected the effect of the plaintiffs injuries on his ability to enjoy life. And, plaintiffs counsel stipulated to the only jury finding that was unsupported by record evidence — future medical expenses — which was reduced to $17,000 by agreement.
 

 Neither the motion for remittitur nor defense counsel’s argument at the post-trial hearings provided any factual support for a remittitur of the intangible damages found by the jury. On the contrary, the record supported the jury’s verdict. “In tort cases damages are to be measured by the jury’s discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed.”
 
 Ashcroft v. Calder Race Course, Inc.,
 
 492 So.2d 1309, 1314 (Fla.1986). “A jury is accorded wide latitude in determining the amount of non-economic damages.”
 
 Hendry v. Zelaya,
 
 841 So.2d 572, 575 (Fla. 3d DCA 2003). The verdict should not be disturbed “unless the record affirmatively shows the impropriety of the verdict or there is an independent determination by the trial judge that the jury was influenced by considerations outside the record.”
 
 Kaine v. Gov’t Emps. Ins. Co.,
 
 735 So.2d 599, 600-01 (Fla. 3d DCA 1999).
 

 There simply is no justification for this remittitur. The trial court abused its discretion in ordering the remittitur. We reverse and remand the case for entry of a final judgment in accordance with the jury’s verdict, excluding the stipulated amount in future medical expenses with “all interest ... computed from the date of the verdict.”
 
 Green v. Rety,
 
 616 So.2d 433, 435 (Fla.1993).
 

 Reversed and Remanded.
 

 DAMOORGIAN and CONNER, JJ., concur.
 

 [1]
 

 . Because we reverse the remittitur, the plaintiffs argument concerning the manner in which the order was entered is moot.