DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUSAN MATRISCIANI,**
Appellant,

v.

**GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,**
Appellee.

No. 4D19-406

[June 10, 2020]

CORRECTED OPINION

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 502015CA004706.

Henry A. Seiden of Seiden Law, Delray Beach, for appellant.

Charles M-P George of the Law Offices of Charles M-P George, Coral Gables, and Harlan H. Gladstein, Plantation, for appellee.

KLINGENSMITH, J.

This appeal arises from Susan Matrisciani's lawsuit against her insurance company following a car accident. Matrisciani challenges the trial court's rulings on several post-trial motions, including: the insurer's motions to reduce the jury verdict by setoff and remittitur, the insurer's motion for entitlement to attorney's fees under a proposal for settlement, and her motion to strike the insurer's settlement proposal. We affirm in part and reverse in part.

Matrisciani was the front-seat passenger in a vehicle that was rear-ended, causing her injuries. Thinking that the other driver's insurance policy would be inadequate to cover her medical expenses, she sued both the driver and her own insurer, Garrison Property and Casualty Insurance Company ("Garrison"), for benefits under a policy covering accidents with uninsured or underinsured motorists ("UIM"). In addition, Matrisciani's policy also provided for $10,000 in personal injury protection benefits ("PIP benefits") and $1,000 in medical payments coverage ("Med-Pay benefits").

Garrison paid Matrisciani both of these benefits for her accident. However, Matrisciani's policy did not allow her to receive duplicate payments and allowed Garrison the right to recover any such payments from her.

Shortly after Matrisciani instituted this suit, Garrison served a proposal for settlement on her for $1,000. The terms of the proposal stated that if accepted, the proposal would "resolve all claims of [Matrisciani], against [Garrison], alleged in this lawsuit." The proposal also stated that it was "intended to terminate all claims, disputes, and obviate the need for further intervention of judicial process," and required Matrisciani to "satisfy all relevant liens." When the proposal for settlement was served, Matrisciani had a $29,211.12 Medicare lien. Since Garrison had already paid Matrisciani the PIP benefits and Med-Pay benefits for the medical expenses she incurred after this accident, the terms of the policy required her to pay back those amounts if she received a recovery from the other driver.

Just before trial, Matrisciani moved for partial summary judgment as to the $19,461.31 in medical expenses she incurred from the accident. The court granted her motion, and the parties stipulated that "[a]ny collateral sources set offs will be determined post-verdict by the Court without the need for the amount, or entitlement to same, to be proven during trial."

The jury entered its verdict finding that the other driver was negligent and awarded Matrisciani the following: $37,000 in past pain and suffering, $7,000 in future medical expenses, and $48,000 in past medical expenses. This totaled $92,000 in damages—$8,000 less than the other driver's $100,000 auto liability insurance policy limits. The next day, Garrison moved for costs and attorney's fees pursuant to their proposal for settlement. Several weeks later, Garrison also moved for setoff and remittitur seeking reduction to the jury's verdict totaling $39,711.12.

Matrisciani and the other driver subsequently announced that they had reached a settlement agreement. Pursuant to this agreement, the trial court entered a $111,461.31 judgment in favor of Matrisciani which comprised of the $92,000 jury verdict plus the $19,461.31 awarded to Matrisciani at summary judgment. Garrison had no knowledge of the settlement and stated that they were not involved in the negotiations.

When ruling on Garrison's post-trial reduction motions, the trial court found that the evidence established Matrisciani's past medical bills were less than the $48,000 that the jury awarded. The court reduced Matrisciani's past medical expenses award ($57,858.85) by the amount

2

she was awarded at the summary judgment hearing ($19,461.31) for a new total of $38,397.54. The court also determined that setoffs of $10,000 for paid PIP benefits and $29,711.12 for "Medicare and/or contractual reductions" were also proper. With these reductions, the court ruled that Matrisciani's recoverable past medical expenses now equaled $18,147.73. Adding this to the $7,000 and $37,000 the jury awarded for future medical expenses and pain and suffering, respectively, the court entered an order granting Garrison's motions for remittitur and setoffs and adjusted the total award to $62,147.73. Since this net award was under the negligent driver's $100,000 insurance policy limit, the court ruled that Garrison was not liable for UIM benefits. This resulted in a judgment against Garrison for $0. Pursuant to Garrison's settlement proposal, the trial court entered an order finding that Garrison was also entitled to attorney's fees under its proposal for settlement and awarded Garrison a total of $61,808.25 in both fees and costs. This appeal followed.

Appellate courts "review orders of remittitur for an abuse of discretion." *Adams v. Saavedra*, 65 So. 3d 1185, 1188 (Fla. 4th DCA 2011). If the trial court finds that the amount awarded to a plaintiff is excessive, it may order a remittitur. *See* § 768.74(2), Fla. Stat. (2017). In determining whether an award is excessive, the court must consider, among other things, "[w]hether the trier of fact took improper elements of damages into account" and "[w]hether the amount awarded is supported by the evidence." § 768.74(5), Fla. Stat. (2017).

There was no error in the court's reduction of Matrisciani's past medical expenses from $48,000 to $38,397.54. The latter amount was the amount of past medical expenses submitted to the jury for their deliberation. The fact this award exceeded the amount of the bills in evidence showed that the jury "took improper elements of damages" into account and that the award was not "supported by the evidence." § 768.74(5), Fla. Stat. As such, the court properly used its discretion in granting Garrison's motion for remittitur as to those amounts. *See Adams*, 65 So. 3d at 1188.

Section 768.76(1), Florida Statutes (2017), provides another avenue besides remittitur for trial courts to reduce certain awards. That section states:

> In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant . . . from all collateral sources; however,

> there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists.

§ 768.76(1), Fla Stat. (2017). Post-trial reductions to a jury award made pursuant to section 768.76(1) are termed setoffs. *See Goble v. Frohman*, 901 So. 2d 830, 832 (Fla. 2005). Orders reducing a verdict pursuant to a setoff are reviewed de novo. *Cornerstone SMR, Inc. v. Bank of Am., N.A.*, 163 So. 3d 565, 568 (Fla. 4th DCA 2015) (stating that "[w]hether the trial court awarded a proper set-off is a pure question of law").

PIP benefits that have been received by a claimant may be setoff from a damage award after the verdict, because they are "collateral sources." *See Geico Gen. Ins. Co. v. Cirillo-Meijer*, 50 So. 3d 681, 683 (Fla. 4th DCA 2010) (allowing UIM carrier a setoff for the PIP benefits it already paid to the plaintiff); *see also Aetna Cas. & Sur. Co. v. Langel*, 587 So. 2d 1370, 1373 (Fla. 4th DCA 1991) (stating that PIP benefits are collateral sources which may be setoff). Because contractual discounts off medical bills also "fit within the statutory definition of collateral sources," they too may be setoff from a verdict. *Goble*, 901 So. 2d at 833. However, "benefits received under Medicare . . . shall not be considered a collateral source" and they are not subject to a setoff. *See* § 768.76(2)(b), Fla. Stat. (2017); *see also Thyssenkrupp Elevator Corp. v. Lasky*, 868 So. 2d 547, 551 (Fla. 4th DCA 2003) ("[C]ases interpreting section 768.76(1) appear not to allow a setoff for this kind of Medicare benefits.").

We agree with Garrison that the trial court did not err in granting a setoff of the PIP benefits. *See Cirillo-Meijer*, 50 So. 3d at 683. However, we also agree with Matrisciani that the trial court failed to credit her for the premiums she paid on the PIP coverage before doing so. In its order, the trial court simply stated that Matrisciani was not entitled to a credit for the past premium payments she made without further explanation. This was error. As Matrisciani rightly contends, "section 768.76(1) 'allow[s] a reduction from the setoffs for the plaintiff's cost of obtaining PIP coverage[.]'" *Forest v. Sutherland*, 110 So. 3d 525, 526 (Fla. 4th DCA 2013) (quoting *McKenna v. Carlson*, 771 So. 2d 555, 558 (Fla. 5th DCA 2000)). Therefore, the court should have also awarded Matrisciani a credit for the premium payments made on her PIP policy.

Matrisciani also claims error in the court's order reducing the verdict another $29,717.12 pursuant to "Contractual Reductions and Medicare Disallowances." Garrison sought these reductions because Matrisciani was a Medicare recipient and Medicare covered most of her medical bills. As such, they claimed that her jury verdict should be reduced to reflect the amount she actually paid, or was still responsible for paying, and not

the full total of the Medicare payments. *See Thyssenkrupp*, 868 So. 2d at 551. We agree with Matrisciani on this point as well. In *Thysenkrupp*, this court allowed the defendant "to have the past medical expenses awarded by the jury reduced—to the extent such amounts are actually included in the past medical expenses awarded—by the difference between the amounts charged by a provider and the amounts actually paid that provider by Medicare." *Id.* This court reasoned: "When a provider charges for medical service or products and later accepts a lesser sum in full satisfaction by Medicare, the original charge becomes irrelevant because it does not tend to prove that the claimant has suffered any loss by reason of the charge." *Id.* Other cases have also held that it is error to permit a plaintiff to introduce into evidence (and to request from the jury) the gross amount of medical bills rather than the lesser amount actually paid as a governmental or charitable benefit in full settlement of those bills. *See Boyd v. Nationwide Mut. Fire Ins. Co.*, 890 So. 2d 1240 (Fla. 4th DCA 2005); *Cooperative Leasing, Inc. v. Johnson*, 872 So. 2d 956, 960 (Fla. 2d DCA 2004); *Miami–Dade Cty. v. Laureiro*, 894 So. 2d 268, 269 (Fla. 3d DCA 2004).

But on rehearing in *Thyssenkrupp*, this court clarified that the issue regarding the reduction of Medicare benefits was solely an evidentiary issue for trial, and that post-trial setoffs for Medicare benefits were not authorized. *See Thyssenkrupp*, 868 So. 2d at 551 ("If this were only an issue of setoff, we might agree with plaintiff's motion for rehearing that some cases interpreting section 768.76(1) appear not to allow a setoff for this kind of Medicare benefits."). If Medicare payments should not be reduced post-trial by way of setoff, reducing them from the verdict pursuant to a remittitur would subvert the purpose of the setoff restriction. If Garrison sought to prevent the Medicare reductions from being included within the calculation of the verdict, the proper method of doing so was to raise its objection to this evidence during trial. *See id.*; *cf. Nationwide Mut. Fire Ins. Co. v. Harrell*, 53 So. 3d 1084, 1087 (Fla. 1st DCA 2010) ("[A]ppellee was entitled to introduce into evidence (and to request from the jury) the gross amount of her medical bills, rather than the lesser amount paid by appellee's private health insurer in full settlement of the medical bills.").

Matrisciani also challenges the trial court's ruling enforcing Garrison's proposal for settlement. "The eligibility to receive attorney's fees and costs pursuant to section 768.79 and [Florida Rule of Civil Procedure] 1.442 is reviewed de novo." *Pratt v. Weiss*, 161 So. 3d 1268, 1271 (Fla. 2015).

A party invokes the eligibility to receive attorney's fees under the proposal for settlement statute when the following requirements are met:

"(1) when [that] party has served a demand or offer for judgment, and (2) that party has recovered a judgment at least 25 percent more or less than the demand or offer." *Schmidt v. Fortner*, 629 So. 2d 1036, 1040 (Fla. 4th DCA 1993). To meet the first requirement, the offer for judgment must be legally sufficient. *See* Fla. R. Civ. P. 1.422(c); § 768.79(2), Fla. Stat. (2017). Here, Garrison's proposal was legally sufficient because it contained all the relevant elements as required by rule 1.442. Further, the terms of the proposal were sufficiently clear and definite to allow Matrisciani "to make an informed decision without needing clarification." *See Am. Home Assurance Co. v. D'Agostino*, 211 So. 3d 63, 66 (Fla. 4th DCA 2017) (quoting *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006)). Ultimately, "[p]roposals for settlement are intended to end judicial labor, not create more." *Nichols*, 932 So. 2d at 1079 (quoting *Lucas v. Calhoun*, 813 So. 2d 971, 973 (Fla. 2d DCA 2002)). Accordingly, courts are discouraged from "nit-pick[ing]" proposals for settlement to search for ambiguity. *Carey–All Transp., Inc. v. Newby*, 989 So. 2d 1201, 1206 (Fla. 2d DCA 2008) (citing *Nichols*, 932 So. 2d at 1079).

As for Matrisciani's assertion that Garrison's proposal for settlement was ambiguous, the standard of review in determining whether a proposal for settlement is ambiguous is de novo. *See Nationwide Mut. Fire Ins. Co. v. Pollinger*, 42 So. 3d 890, 891 (Fla. 4th DCA 2010).

Matrisciani claims that the proposal was ambiguous because it required her to "satisfy all relevant liens" but did not specify which liens she needed to satisfy. However, it is clear that the Medicare lien was the only "relevant lien" that needed to be satisfied under the proposal since no other payor had asserted a claim of lien at the time the proposal was served. She relies on *Saenz v. Campos*, 967 So. 2d 1114, 1117 (Fla. 4th DCA 2007), to support her claim that the proposal's language that it would "resolve all claims" against Garrison also made the proposal ambiguous because it could have been interpreted to include her claims against the other driver. However, Matrisciani's argument has no merit because our case is distinguishable from *Saenz*. Unlike the plaintiff in *Saenz*, Matrisciani only had one pending lawsuit in which the negligent driver and Garrison were co-defendants. *See id.* at 1115. The other driver and Garrison both had separate counsel and had operated independently of each other up to that point. The fact that the other driver was not even mentioned in the proposal should have given Matrisciani the indication that the proposal had nothing to do with that driver and would not have terminated that part of her lawsuit. Thus, we cannot foresee how the phrase "resolve all claims" in paragraph 7 in conjunction with paragraph 9's provision stating that the proposal was "intended to terminate all claims, disputes, and obviate the need for further intervention of judicial

6

process" created any uncertainty or would have affected Matrisciani's decision on whether to accept the proposal. The fact that no other possible claims could have existed between the parties either within or outside of this action also distinguishes this case from other cases which have found proposals for settlement to be deficient where the proposals may have extinguished other pending unrelated claims. *See, e.g., Nichols*, 932 So. 2d at 1079 ("At the time of the offer, [the plaintiff] not only had a pending PIP claim against [the defendant], but also a UM claim arising from the same accident and of greater value."); *Palm Beach Polo Holdings, Inc. v. Vill. of Wellington*, 904 So. 2d 652, 653 (Fla. 4th DCA 2005) ("[T]he offer was legally deficient because plaintiff's acceptance could have extinguished other pending unrelated claims.").

Additionally, when evaluating whether Garrison met the threshold amount for an award of attorney's fees under section 768.79(6), the trial court did not err in considering the judgment obtained against Garrison rather than the judgment obtained through negotiation with the negligent driver. Because a UIM carrier's settlement offer should be viewed in relation to the plaintiff's potential recovery over the tortfeasor's insurance limits, *see Allstate Ins. Co. v. Silow*, 714 So. 2d 647, 650 (Fla. 4th DCA 1998), if Matrisciani's judgment recovered against the other driver is within that tortfeasor's liability limits, the UIM carrier has no liability and is entitled to a $0 judgment in their favor. *See Allstate Ins. Co. v. Staszower*, 61 So. 3d 1245, 1246 (Fla. 4th DCA 2011). Thus, any settlement offer made by a UIM carrier in such a case will be greater than the plaintiff's recovery. *See id.*

Similarly, there was no error in the court finding that Garrison's proposal was made in good faith. Our standard of review for whether a proposal for settlement was made in good faith is abuse of discretion. *See Sharaby v. KLV Gems Co.*, 45 So. 3d 560, 563 (Fla. 4th DCA 2010); *see also* § 768.79(7)(a), Fla. Stat. (2017) ("[T]he court may, *in its discretion*, determine that [a proposal] was not made in good faith.") (emphasis added)); Fla. R. Civ. P. 1.442(h)(1) (same). "The offeree bears the burden of proving the offeror's proposal was not made in good faith." *Sharaby*, 45 So. 3d at 563 (quoting *Liggett Grp. Inc. v. Davis*, 975 So. 2d 1281, 1285 (Fla. 4th DCA 2005)). Offers are not suspect merely because they are nominal." *State Farm Mut. Auto. Ins. Co. v. Sharkey*, 928 So. 2d 1263, 1264 (Fla. 4th DCA 2006). As we stated in *Sharkey*:

> Offers, nominal or otherwise, must bear a reasonable relationship to the amount of damages or a realistic assessment of liability. "The rule is that a minimal offer can be made in good faith if the evidence demonstrates that, at the

time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal." "The offer need not equate with the total amount of damages that might be at issue."

*Id.* (citations omitted).

In addressing whether the trial court abused its discretion by finding that Garrison's nominal proposal for settlement was made in good faith, we must consider whether Garrison "had a reasonable basis at the time of the offer to conclude that [its] exposure was nominal." *Fox v. McCaw Cellular Commc'ns of Fla., Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA 1998); *see also Dep't of Highway Safety & Motor Vehicles, Fla. Highway Patrol v. Weinstein*, 747 So. 2d 1019, 1021 (Fla. 3d DCA 1999) (reversing the trial court's denial of attorney's fees, which were sought under section 768.79, where the record conclusively demonstrated that, at the time the nominal proposal for settlement was made, the offeror had a reasonable basis to conclude that its exposure was nominal). Further, we recognize that good faith is "determined by the subjective motivations and beliefs of the pertinent actor." *Weinstein*, 747 So. 2d at 1021.

We find that Garrison's proposal bore a reasonable relationship to the amount of damages and a realistic assessment of its liability. Here, the record reflects that Garrison made its proposal for settlement following almost two years of litigation and extensive discovery. They understood the amount of medical bills previously incurred, and the extent of Matrisciani's injuries, to assess her pain and suffering and future medical needs in light of the policy limits available from the negligent driver. Thus, the record conclusively demonstrates that Garrison "had a reasonable basis at the time of the offer to conclude that [its] exposure [as to its UIM coverage] was nominal." *Fox*, 745 So. 2d at 333. Therefore, we agree with the trial court that Garrison's $1,000 proposal was made in good faith. *See Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc.*, 53 So. 3d 348, 354-55 (Fla. 4th DCA 2010) (finding that a $500 proposal was made in good faith); *Mount Vernon Fire Ins. Co. v. New Moon Mgmt., Inc.*, 239 So. 3d 183 (Fla. 3d DCA 2018) (finding that a $1,000 proposal for settlement was made in good faith).

For these reasons, we reverse the judgment entered and remand for the trial court to address the issues of setoff and remittitur in accordance with this opinion. In doing so, we can make no determination whether Garrison's proposal met the threshold amount to trigger entitlement to attorney's fees until a net judgment against Garrison is recalculated after considering all legally authorized reductions. *See Fla. Gas Transmission*

*Co. v. Lauderdale Sand & Fill, Inc.*, 813 So. 2d 1013, 1015 (Fla. 4th DCA 2002).  Assuming the recalculated judgment meets the threshold amount under section 768.79, the court may then revisit its order on entitlement as well as its award of attorney's fees to Garrison, making any modifications it deems appropriate.  Unless specifically addressed herein, we find all other issues raised by Matrisciani to be without merit.

*Affirmed in part, reversed in part and remanded.*

CIKLIN, J., and LEVENSON, JEFFREY R., Associate Judge, concur.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**